Good morning, Your Honors. I represent the petitioner in this case, Marlon Spaulding. And the legal issue in this case is, did Mr. Spaulding derive U.S. citizenship through the naturalization of his biological mother in 1994? And the subsidiary legal issue that the parties are disputing is, was Mr. Spaulding's paternity established by legitimation under the law of Jamaica? And what we've been arguing from the beginning is that, as a matter of logic, it's just not possible for Mr. Spaulding's paternity to have been established by legitimation under Jamaican law because there is no evidence that the government of Jamaica knows or recognizes the identity of his biological father. When was his birth certificate, his most recent birth certificate issued? 2005. When the petitioner was born, they had a very disorganized birth record system that was all handwritten. In the 2000s, they upgraded it to a computer birth record, and that is also in the record. And that was in 2005, and it's still blank for who his father is. 2005 is when he made his application, or his mom made the application for naturalization. 1994 is when the mother naturalized. No, I know that. But I'm asking when mom made the application for him and his brother as to their naturalization. I believe it was around 2005, yes. But there was also a contemporaneous birth certificate that was issued at the time he was born, and it also was blank for who the father is. He came in, what, 97? 87. 87, he was 11 at the time? Yes. He was born at 76? Yes. All right. So 29 years after the fact, he still had no father listed on his Jamaican birth certificate? Yes. And one of the things that we've highlighted is the fact that the petitioner's biological brother, in identical circumstances, applied for a naturalization certificate, same time, same agency, same facts. They grant his brother's, deny his. And presumably it's because his brother has no criminal record, and Mr. Spaulding, unfortunately, does. But that's legally irrelevant in determining if he's a derivative citizen. And there's really no other explanation as to why one was granted and one wasn't. And I think his brother may have been granted a citizenship by mistake or a certificate by mistake. That's certainly what the government is arguing, but there's no evidence in the record of that. There's no testimony or deposition. But it could be. I was just making the point. It could be another explanation. Sure. Yes. I mean, we definitely agree that it's not sometimes the government makes decisions and they go back and look at it and say, hey, we made a mistake. I'm not saying that it's impossible that that's what happened, but that there's no evidence in the record to justify that. And if the court was concerned with that issue, then I think the proper move is to remand this to the district court. Because the reason why the remand procedure was put in there is because there is no discovery in immigration court. So there was really no way for us to get pieces of evidence from his brother's file to see why he was naturalized. If this gets remanded to the district court, we can depose the person who adjudicated the brother's petition. We can get some documents and put in the record exactly why the brother was granted. We don't think the court needs to do that because, as we've argued, they don't know who his father is, so how could his paternity have been established if they don't even know who his father is? But if the court is concerned and isn't fully convinced on that, then we would argue remand is the proper course because then we can have a discovery process to explore why his brother was found to be a derivative citizen. Thank you. Good morning, Your Honors. May it please the Court, Marina Stevenson for the respondent, the United States Attorney General. And this is not an issue of first impression in this court, and there are no material facts that are in dispute that merit sending this case to the district court. The only issue for this court to review is whether both of the petitioner's parents were U.S. citizens before March 17, 1994, when the petitioner turned 18. Both parties agree they were not. Therefore, because the petitioner was legitimized on January 7, 1989, when his parents married in Jamaica, he was only eligible for derivative citizenship upon naturalization. To rule otherwise would read out, and the paternity of the child has been established by legitimation. This court's precedent of a pardon me. Well, it turns out whether the effect of the marriage in the United States, right, on Jamaican law. Under the Jamaican Legitimation Act, which I don't want to waste this court's time reading, which is found in the administrative record, upon marriage, the child was legitimated under Jamaican law. And this court has found that, has interpreted that law. Well, the case that you referenced was a Jamaican marriage. It was solemnized in Jamaica, wasn't it, as opposed to the United States? I believe the record shows that the marriage occurred in Jamaica as well, Your Honor. You say that the record here shows the marriage was done in Jamaica? I believe that's correct, Your Honor. But I thought it was after she'd come to the United States. She came to the United States, Your Honor. Did she return to Jamaica in 89? I believe that's what the record reflects, is that she returned to Jamaica to marry, then came to the United States. Okay. The parents married on January 7, 1989. She naturalized on January 7, 1994. Okay. The petitioner would like this court to go down the rabbit hole of the brother, but there's absolutely nothing in the record that is relevant to the three elements that must be met in this case, whether both parents naturalized before he was 18 and he was a lawful permanent resident. The fact of the matter is his father did not naturalize until March 18, 2006, many years after he turned 18. I believe it was 12 years after he turned 18. Your position is that we look to Jamaican law, it's completely irrelevant whether Jamaica's records reflect the father's presence or the legitimation. It's just the operation of Jamaican law, and that's quite clear. It is, Your Honor. And this court, obviously not in precedential decisions, but has looked to the birth certificate for indicia of reliability, and those indicia include shared last name on the birth certificate, shared paternity with siblings. And, in fact, if the administrative record, when you look at his N-600, it says, is your mother your father? And he responds yes. So we have a birth certificate that has the father's last name. It's irrefutable that his brother shares paternity with the father, and he even represents in his N-600 a formal government document that his mother's husband is his father. So for those reasons, the only ruling consistent with this Court's past rulings, the immigration judge's holding, the Board's affirmance, is to deny the petition. Thank you, Your Honors. Thank you, Your Honors. One issue that I did want to raise, and I will be filing a 28-J letter, there was a decision from this Court last month, Jane v. Sessions, that dealt with a somewhat similar issue where the Court found, despite the fact that neither of the petitioner, in that case his biological parents, were U.S. citizens, that the petitioner acquired citizenship through what they termed as a parent, despite the fact that that person was not his biological father. So I think that that shows that the Court has recognized that legal determinations of citizenship don't rest purely on the biology of who someone's father is. In that case, it was found that the petitioner acquired citizenship through someone who he had no biological relationship and was not the father. So we're not disputing the biological relationship. What we're disputing is whether the Jamaican government recognizes him as his father. When was that case decided? I believe it was the 12th of August. 899 Federal 3rd 182 is the citation. I don't think you need to file a 28-J letter since you've now given us the case, but in the future it's helpful if you do it before arguments so your adversary can respond and so that we can also know what authority you're relying on. Thank you, Your Honors. Thank you.